No. 197.—B. W. SMITH *v.* E. L. HENDERSON et als.

One judgment creditor may attack the judgment of another creditor of the common debtor and show its nullity on the ground that its consideration was based on an obligation given for the sale of slaves.

A judgment that has been given predicated on a slave contract or a slave consideration is null and void, and its enforcement or execution by the court that rendered it is prohibited by article 128 of the constitution of 1868. (Article 149 of the constitution, which declares all judgments valid and binding which were rendered by the courts of the State during the period of the late civil war, only gives validity to such judgments as were based on a lawful consideration. It having been first settled by the highest judicial tribunal of the State, and afterward enacted into the organic law by the convention which framed the constitution, that an obligation or contract predicated on slaves was illegal and void, it is therefore held that judgments of inferior courts which were rendered before these decrees and enactments were made, based on contracts or obligations for the sale of slaves, were absolutely null in themselves, and that all such judgments are included in the prohibition of article 128 of the constitution.

APPEAL from the Fourteenth Judicial District Court, parish of Morehouse. *Crawford, J. S. G. Parsons,* for plaintiff. *C. T. Dunn,* for defendants.

LUDELING, C. J The record in this case was destroyed with the court house by fire, and the parties have submitted this appeal on a statement of facts

It appears that Henderson had a judgment against Benjamin Temple and others. That having issued execution, under this judgment, and seized all the property of said Temple, B. W. Smith, another judgment creditor of Benjamin Temple, enjoined the sale, on the grounds that the judgment was based on obligations given for the price of slaves, that the property seized was subject to a judicial mortgage resulting from the registration of his judgment against Benjamin Temple, that the property seized was insufficient to satisfy both judgments, and that the sale thereof would result to his injury, and he prayed that the judgment of Henderson might be annulled, and that his injunction might be perpetuated.

A motion to dissolve this injunction, on the face of the papers, was filed, and the prescription of one year against the right to sue for the nullity of the judgment was pleaded. That admitted the truth of the allegations of the petition.

The question presented for decision is, whether one judgment creditor, with a judicial mortgage on property of the common debtor, can interpose to prevent the execution of the judgment of another creditor, on the ground that said judgment was rendered on obligations given for the price of persons, when it is shown that the property of the common debtor is insufficient to pay both judgments.

The plaintiff contends that under the jurisprudence of this State, settled before the adoption of the constitution, such obligations were invalid and void, and that article 128 of the constitution declared them

null and void, and prohibited the courts of this State from enforcing all such obligations.

The defendant, on the other hand, invokes article 149 of the constitution as recognizing the right to enforce *all judgments* rendered between the twenty-sixth of January, 1861, and the date when the constitution was adopted

It is evident that this construction of article 149 of the constitution would make it conflict with articles 127 and 128 of the constitution. These articles declare that "*all contracts* for the sale of persons or for Confederate treasury notes are null and void," and they prohibit the courts of this State from enforcing such contracts.

"A judgment neither creates, adds to nor detracts from the debt of the party against whom it is rendered. It only declares its existence, fixes its amount and secures to the creditor the means of enforcing its payment." 10 R. 412; Gustine *v.* Union Bank of Louisiana, 18 L. R. 414; 9 Rob. 119

It is a necessary step to enforce obligations, and without which courts can not enforce them.

If, therefore, the courts lend their aid to execute judgments they necessarily enforce the contracts which form the basis of the judgments.

In construing a law or a constitution, we should so interpret it as to make all its parts harmonize if possible. The construction contended for by defendants should be rejected, therefore, if the article be susceptible of any other which will make it harmonize with articles 127 and 128 of the constitution

Article 149 was intended as a statute of repose in all matters when not inconsistent with the provisions of the constitution itself. It was intended to cure defects in proceedings resulting from the supposed want of authority in the officers in power in the State during the rebellion, and after, up to the period when the constitution was adopted, and all other defects which it was competent for the State, in the exercise of its limited sovereign power, to cure. But it was not designed to apply to judgments or judicial proceedings *radically null.* For instance, it could not have been intended to validate a judgment rendered on a forged instrument, or a judicial sale without any judgment or order whatever. At the period when the convention which framed the constitution was convoked, it had been repeatedly decided that obligations for the sale of persons were invalid. The convention manifested its approval of those decisions by incorporating in the constitution articles 127 and 128. If the jurisprudence of Louisiana on the subject of obligations for slaves and for Confederate money had not been regarded as correctly settled, in accordance with the views expressed in Wainright *v.* Bridges and other cases, it is quite certain

that those articles would not have been incorporated in the constitution; for, if those obligations were valid, the convention had not the power to impair them under the Constitution of the United States. They had not the power to impair the obligation of a contract, whether evidenced by a note or judgment.

It can not be presumed that the members of the Constitutional Convention were ignorant of the fact that before this court had decided the case of Wainright v. Bridges, judgments recognizing the validity of obligations for slaves had been rendered throughout the State; nor can it be presumed that, knowing this, the Convention intended that courts should enforce these contracts which were in judgments, when they emphatically declared " all contracts for the sale of persons null and void," and prohibited their enforcement by the courts of this State. What is clear in one part of the law may be called in aid to explain what is doubtful in another. C. C. art. 17.

But this question has already been decided. In Henderson v. Montgomery, this court said: " We consider that there is nothing now to sustain an appeal; that the judgment or order appealed from being in conflict with the fundamental and paramount law of the land, is an utter nullity, and the parties must be left where they were when it was struck with nullity. 18 An. 211.

In Thomas v. Hacket, we held that a twelve months' bond, on which a *fieri facias* had been issued, and a part of it had been collected, was invalid, and we ordered the cancellation of the mortgage resulting from its registry because it was given for slaves sold at a sheriff's sale. 21 An. 164. In Sandidge v. Sanderson, 21 An. 757, Satterfield v. Spurlock, 22 An. 771, and numerous other cases, this court has perpetuated injunctions arresting the sales of property under orders of seizures and sales, on the ground that slave contracts could not be enforced in this State. And in Henderson v. Mutual Insurance Company, we held that one judgment creditor could attack the judgment of another creditor of the common debtor and show that the judgment was a nullity because predicated on Confederate money, the court said: "Admitting the correctness of the legal position assumed by him, he is successfully met by the plea to the validity of his judgment which is not yet executed. His answers to the interrogatories leave no doubt that the said judgment was based on a contract or agreement the consideration of which was Confederate money, and is therefore null. To render the decree asked for by him would be to enforce a prohibited agreement. Article 127 Constitution; 23 An. Thus the question has been decided in almost every shape that it could be presented.

It is therefore ordered and adjudged that the judgment of the district court be annulled, and that there be judgment in favor of the plaintiff perpetuating the injunction, and for costs of both courts.

WYLY, J., *dissenting.* The plaintiff, a judgment creditor of Benjamin Temple, of date June, 1869, enjoins the execution of the other judgment creditor, Mrs. E. L. Henderson, of date and registry June, 1866, on the ground that the property of Temple, the common debtor, seized by the defendants, will not be sufficient to pay both judicial mortgages, the defendant's (Mrs. Henderson) mortgage being prior in rank according to registry; but that her judgment is based upon a debt for the price of a slave and can not be enforced by the courts, and that the sale of the property thereunder will damage the plaintiff, it being the only property of said Temple.

The proceeding seems to be anomalous. It is not an action to annul the judgment, whose execution the plaintiff, a third party, has restrained by the writ of injunction sued out by him. Temple, the common debtor, is not made party to this attack upon the judgment of Mrs. E. L. Henderson against him. If the plaintiff succeeds in having the judgment, attacked in this collateral manner, declared a nullity, the decree will not have the force and effect of the thing adjudged between Mrs. Henderson and her judgment debtor, Temple. The man whose property has been seized by his judgment debtor will not have the benefit of the decree invalidating the judgment against him, under which the seizure was levied. The only law we have authorizing a third party to oppose the sale of property under a judgment of court is to be found in the Code of Practice.

Article 395 declares that "this opposition is a demand brought by a third person, not originally a party in the suit, for the purpose of arresting the execution of an order of seizure or judgment rendered in such suit, or to regulate the effect of such seizure in what relates to him."

Article 396 declares that "such opposition may take place in two cases:

"I. When the third person making the opposition pretends to be the owner of the thing which has been seized.

"II. When he contends that he has a privilege on the proceeds of the thing seized and sold."

If the third person claims the property he may enjoin the sale, and in such proceeding this opposition shall be considered as a separate demand. C. P. 400, 398.

"If, on the contrary, the opposition be made on the ground that the third opponent has a privilege which entitles him to be paid in preference to the party making the seizure out of the proceeds of the sale of the property, as when there are several seizures or conflicting claims on the same property, such opposition may be made by motion, of which due notice must be given both to the party who has made the seizure and to the sheriff; and the court, without requiring any secu-

rity from the third opponent, shall direct the sheriff to retain in his hands, subject to further order, the proceeds of the sale." C. P. 401.

The right of this third opponent does not arise under either of the provisions of article 396. He does not claim the thing, and therefore has no right to oppose and enjoin the sale. He does not claim a privilege on the proceeds of the sale superior to Mrs. Henderson, the seizing creditor; if he did, it would be no cause to enjoin the sale. A senior mortgage creditor can not prevent the sale of the common debtor's property under a seizure of the junior mortgage creditor. His remedy, under article 401, is on the proceeds in the hands of the sheriff.

Here the plaintiff, without ever causing execution to issue on his own judgment, proposes to suspend the execution of Mrs. Henderson's judgment against her judgment debtor, Temple, on the mere suggestion of a defense which Temple never cared to oppose to his creditor, Mrs. Henderson, at the trial in 1866.

Here the third opponent, under a judgment in 1869 on a debt contracted in 1866, seeks by a collateral attack to have the debt on which Mrs. Henderson's judgment was based for a slave, contracted before the war, long anterior to his own claim, declared an absolute nullity, notwithstanding article 1993 of the Revised Civil Code declares that "no creditor can, by the action given by this section, sue individually to annul any contract made before the time his debt accrued." From the evidence I have no doubt that the debt for the slave, on which the judgment of Mrs. Henderson is founded. was long anterior to the time the debt of the plaintiff was contracted.

This court has repeatedly decided under the article quoted that an inquiry into the consideration of an anterior contract can not be instituted by a creditor subsequently acquiring rights against the same debtor.

The judgment of a court of competent jurisdiction unappealed from, where the parties have been cited, is not and never can be an absolute nullity. It can only be attacked in the action of nullity provided by the articles of the Code of Practice under the title "Of the nullity of judgments."

Article 604: "One may demand the nullity of a judgment for any of the causes provided in this section, even if no appeal have been taken from the same or if the delay for taking the same have expired."

Article 605: "The causes for which the nullity of a definitive judgment may be demanded are two-fold: Those that are relative to the form of proceeding, and those that appertain to the merits of the question tried."

The vices of form are detailed in article 606.

Article 607 declares that "a definitive judgment may be annulled in all cases where it appears that it has been obtained through fraud

or other ill practices on the part of the party in whose favor it was rendered; as if he obtained the same by bribing the judge or the witnesses, or by producing forged documents or by denying having received the payment of a sum, the receipt of which the defendant had lost or could not find at the time, but has found since the rendering of the judgment."

It is not pretended that the judgment enjoined is affected by vices of form. C. P. 606. There is no allegation that it was obtained through fraud or other ill practices of Mrs. E. L. Henderson, or is liable to nullity under article 607, C. P. Indeed, the debtor in the judgment sought to be declared a nullity is not a party to this proceeding, and the plaintiff does not pretend to sue under the articles of the Code of Practice under the title "Of the nullity of judgments."

I think the proceeding most extraordinary and such as is not warranted by law.

We can not get before the court the consideration of the debt merged in the judgment in the proceeding before us. The inquiry can not be instituted except by opening the judgment in the manner provided by law. The action of nullity is the only mode provided by law to revise a judgment after the time for appeal has passed; and until it is legally opened for revision we can have no legal knowledge of the evidence on which it was rendered.

"A judgment is the highest evidence of a debt, and the title merges in the judgment. So, where judgment is had upon a note, the latter is merged in the former, from which only by its reversal or rescission can it be severed. So, too, a judgment in an action on which a judgment is rendered is merged in the latter; the debtor can not then plead against the claim thus merged in the judgment any prescription but that which bars the latter." 9 La. 418; 1 An. 372; 3 An. 386; 7 An. 334; 9 An. 339; 12 An. 736; 14 An. 205, 231, 261; also authorities collated, Hen. Dig. 726, No. 6.

All irregularities or defects in the proceedings anterior to judgment, except the entire want of citation, must be corrected by appeal or in some direct proceeding instituted to set aside said decree. 2 R. 503.

There is no doubt of the slave consideration of the debt on which the judgment attacked was based. It was a defense that might have been urged at the trial; it can not be urged now as a ground for injunction. The writ of injunction may be used as a means to protect a person in the enjoyment of some right or thing already in possession of the party suing it out. It ought not to be used merely for the purpose of suspending indefinitely the execution of a judgment of the court that has not been annulled and is not sought to be annulled according to the provisions of the Code of Practice.

The fallacy of the reasoning of the counsel of the plaintiff is in supposing that a judgment is but the evidence of a debt, and that its slave consideration or the slave consideration of the note on which it was based may be judicially ascertained independently of the articles of the Code of Practice, and when ascertained it may be declared an absolute nullity, or its execution may be indefinitely suspended, as in the case before us, by a third party without an action of nullity.

I do not think the court ought to entertain irregular suggestions of the invalidity of judgments and perpetually bar their execution. I think a judgment is not only the most solemn evidence of an indebtedness, but it is also the fiat of the sovereign peremptorily commanding its payment. It is the mandate of the State ordering the enforcement of the debt found to be due the creditor after full hearing of the parties and the evidence, which debt becomes merged in the judgment and can not be severed therefrom.

The judgment whose execution has been arrested by the injunction of the plaintiff has already been enforced, so far as the courts of the State are concerned. The debt already had the fiat or warrant of the sovereign for its enforcement. In 1866 the judgment became final; it acquired the force and effect of the thing adjudged. There was no prohibitory law at that time forbidding the courts from giving the sanction of the State to debts for the price of slaves. No prohibitory law subsequently enacted can affect the judgment rendered in 1866. If article 128 of the Constitution be held to have that effect it will deprive the plaintiff of her mortgage right, which she had previously acquired; it will impair the obligation of a contract and violate the Constitution of the United States, the paramount law of the land. But I do not believe that article 128 has any application to the judgment before us; it applies to contracts to be enforced subsequent to the adoption of the Constitution. So far from intending to invalidate judgments existing at the time of the adoption of the Constitution, I think it was the express purpose of the framers of our Constitution to validate them. Article 149 of the Constitution I regard as conclusive on this point. It declares that: "All rights, actions, prosecutions, claims, contracts and all laws in force at the time of the adoption of this Constitution, and not inconsistent therewith, shall continue as if it had not been adopted; *all judgments* and judicial sales, marriages and *executed contracts*, made in good faith and in accordance with existing laws in this State, rendered, made or entered into between the twenty-sixth day of January, 1861, and the date when this Constitution shall be adopted, *are hereby declared to be valid*, except the following," etc.

I therefore feel it my duty to dissent in this case.